## JONES *v.* WESTERN U. TEL. CÓ.

*(Circuit Court, E. D. Arkansas.* October Term, 1883.)

LIABILITY OF TELEGRAPH COMPANIES FOR ERRORS IN TRANSMISSION OF MESSAGES—PRINTED CONDITIONS ON BLANKS.

The printed conditions on the half-rate message blanks of the Western Union Telegraph Company are reasonable and valid, to the extent of protecting the company from damages for any error or mistake occurring in the transmission of a half-rate message, unless it is shown affirmatively that such error or mistake was the result of gross negligence or fraud; and mere proof of the fact that there is a mistake of a word or a figure in the message as delivered, is not in itself sufficient evidence of negligence or fraud to render the company liable beyond the amount stipulated for in the contract of the parties.

At Law.

*M. W. Benjamin,* for plaintiff.

*U. M. & G. B. Rose,* for defendant.

CALDWELL, J. The plaintiff delivered to the defendant at Little Rock, for transmission to St. Louis, a message written on one of the half-rate night message blanks containing the usual printed conditions. The following is a copy of the printed conditions and the message written thereunder:

"THE WESTERN UNION TELEGRAPH COMPANY.

*"Half-Rate Message.'*

"'The business of telegraphing is liable to errors and delays, arising from causes which cannot at all times be guarded against, including sometimes negligence of servants and agents whom it is necessary to employ. Most errors and delays may be prevented by repetition, for which, during the day, half price extra is charged in addition to the full tariff rates.

"The Western Union Telegraph Company will receive messages, to be sent without repetition during the night, for delivery not earlier than the morning of the next ensuing business day, at one half the usual day rates, but in no case for less than twenty-five cents tolls for a single message, and upon the express condition that the sender will agree that he will not claim damages for errors or delays, or for non-delivery of such messages, happening from any cause, beyond a sum equal to ten times the amount paid for transmission; and that no claim for damages shall be valid unless presented in writing within thirty days after sending the message.

"Messages will be delivered free within the established free delivery limits of the terminal office. For delivery at a greater distance a special charge will be made to cover the cost of such delivery, the sender hereby guarantying payment thereof.

"The Company will be responsible to the limit of its lines only, for messages destined beyond, but will act as the sender's agent to deliver the message to connecting companies or carriers, if desired, without charge and without liability.

"A. R. BREWER, Secretary          NORVIN GREEN, President.

"Feb. 24, 1882.

"Send the following half-rate message, subject to the above terms, which are agreed to:

"To *E. A. Kent & Co.* 318 *Chamber of Commerce, St. Louis, Mo.*:   Buy ten June wheat Chicago account Boyd and five account Clark.   Quote June New York.                                                          T. H. JONES.

"☞ Read the notice and agreement at the top."

When the message was delivered to the plaintiff's brokers in St. Louis the word "cheap" had been substituted for "Chicago," and the plaintiff alleges that by reason of this mistake he was damaged to the amount of $768.75.

The defendant interposes three defenses: (1) Contributory negligence, in this, that the word "Chicago" in the message was so badly written as to be easily mistaken for the word "cheap;" (2) the printed conditions on the blank on which the message was written, to the effect that the company would not be liable for damages for errors or delays, or for non-delivery of such message happening from any cause, beyond a sum equal to ten times the amount paid for transmission; and (3) that the message was intended to procure the persons to whom it was addressed to buy in the market what are commonly known as "futures," and had relation, therefore, to gambling transactions, out of which no valid or binding agreement or legal obligation could arise against any one.   In the view the court takes of the case, it is only necessary to consider the second defense.

With knowledge of the fact that it was open to him to send the message at full rates, and secure accuracy in its transmission by having it repeated, the plaintiff elected to send it at half rates, with full knowlege of the printed conditions on the blank on which the message was written.   He must therefore be held to have agreed to these conditions; and he is bound thereby to the extent to which the conditions are valid and obligatory.

The plaintiff has offered no evidence of negligence on the part of the defendant other than that the message as delivered differed from the message as written in the particular mentioned.   There is no evidence tending to show when, where, and how the mistake occurred. The defendant has shown that it had suitable instruments and wires for transmitting the message, and that it was sent over the wire by a skillful and experienced operator.

There is a conflict of judicial opinion as to the law applicable to the facts of this case.   It would serve no useful purpose to review the cases in detail and restate the reasoning of the courts *pro* and *con* on the question.   That has been done often enough already.   Nor is it necessary in this case to inquire whether the conditions on which these half-rate messages are accepted to be sent, are effectual to protect the telegraph company from liability in all cases; as, for instance, for not sending or not delivering the message, or in any case of confessed negligence or fraud.   It is sufficient to say that the weight of authority and the ablest and best reasoned cases establish the doctrine that the conditions contained in the blank, on which the plaintiff wrote his message and to which he assented, are reasonable and valid to the ex-

tent of protecting the telegraph company from damages for any error or mistake occurring in the transmission of the message, unless it is shown affirmatively that such error or mistake was the result of gross negligence or fraud on the part of the company; and that mere proof of the fact that there is a mistake of a word or a figure in the message is not sufficient evidence of negligence or fraud to render the company liable beyond the amount stipulated for in the contract of the parties. *Western U. Tel. Co.* v. *Neill,* 57 Tex. 283; S. C. 13 Cent. Law J. 475; *Aikin* v. *Western U. Tel. Co.* 5 S. C. 358; *Pinckney* v. *Western U. Tel. Co.* Sup. Ct. S. C. MS. Op. Nov. Term 1882; *Ellis* v. *Amer. Tel. Co.* 13 Allen, (Mass.) 226; *Grinnell* v. *Western U. Tel. Co.* 113 Mass. 299; *Schwartz* v. *Atlantic & P. Tel. Co.* 18 Hun, 157; *Becker* v. *Western U. Tel. Co.* 11 Neb. 87; [S. C. 7 N. W. Rep. 868;] S. C. 23 Alb. Law J. 277; *Sweatland* v. *Ill. & M. Tel. Co.* 27 Iowa, 455; *White* v. *Western U. Tel. Co.* 14 FED. REP. 710.

Under his contract with the defendant the plaintiff is entitled to judgment for 10 times the amount paid by him for transmitting the message and no more. Judgment accordingly.